# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 01, 2014 Session

## DAVID W HAMILTON, ET AL v. ABERCROMBIE RADIOLOGICAL CONSULTANTS, INC., ET AL

### Appeal from the Circuit Court for Knox County
### No. 144311      Dale C. Workman, Judge

---

### No. E2014-00433-COA-R3-CV-FILED-DECEMBER 15, 2014

---

This is a health care liability action, arising from the death of Decedent, David Hamilton. Decedent's surviving spouse, Donna Hamilton (Appellant), filed this action against Appellees, Abercrombie Radiological Consultants, Inc. and Dr. Donna K. Culhane. Appellees moved to dismiss the action for failure to comply with the notice requirement of Tennessee Code Annotated Section 29-26-121 *et seq*. Specifically, the Appellees challenged whether the medical release provided with the pre-suit notice letter was compliant with the Health Information Portability and Accountability Act ("HIPAA"). The trial court agreed with Appellees and dismissed the action with prejudice. Appellant timely appealed. We reverse and remand the matter to the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed and Remanded

KENNY ARMSTRONG, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and THOMAS R. FRIERSON, II, J., joined.

Sidney W. Gilreath, Cary L. Bauer, and Matthew B. Long, Knoxville, Tennessee, for the appellant, Donna L. Hamilton.

James H. London, Jennifer P. Taylor, and Andrew R. Tillman, Knoxville, Tennessee, for the appellees, Abercrombie Radiological Consultants, Inc. and Donna K. Culhane, M.D.

1

**OPINION**

**I. Background**

On May 12, 2010, Decedent was transported to Mercy Medical Center-North where he presented with "mental status changes and bowel and bladder incontinence." A CT scan was ordered with the indications for CT scan listed as "Syncopal episode found unresponsive with history of hypertension." Appellee, Dr. Donna K. Culhane, an employee of Appellee Abercrombie Radiological Consultants, Inc., read the CT scan and interpreted it as a "stable negative head CT." Instead, the subject CT scan, according to Appellant, demonstrated "swelling and occlusion of the left middle cerebral artery." Decedent's condition at the time of admission did not improve, and on May 13, 2010, an MRI was ordered. The MRI conducted that same day showed a developing ischemic stroke on the left side of Decedent's brain. The following day, on May 14th, Decedent suffered a diffuse left middle cerebral artery distribution stroke and died.

On August 31, 2011, Appellant Donna L. Hamilton filed this action against the Appellees for medical malpractice and the wrongful death of her husband.[1] In her complaint, Appellant asserts that Dr. Culhane's failure to correctly interpret the Decedent's CT scan resulted in him not receiving the appropriate medical treatment, which ultimately led to the stroke that caused his death. In anticipation of filing this health care liability action, on January 20, 2010, Appellant had one of her attorneys send a pre-suit notice letter to each of the Appellees. Each notice letter included a HIPAA medical release. The medical release, however, had an open date line. According to Appellant, the date line was intentionally left open so that Appellees could fill it in at their convenience, and so the release form would not "become stale."

On January 15, 2014, the Appellees moved to dismiss the complaint filed herein for noncompliance with Tennessee Code Annotated Section 29-26-121(a)(2)(E). In support of their motion, the Appellees asserted that the Appellant failed to include, with her notice letter, a HIPAA compliant medical authorization for the release of Decedent's medical records. While the medical release was signed by an authorized party, Appellees argued it

---

[1] Although Appellant styles her case as a "medical malpractice" action, we note that, effective April 23, 2012, the Tennessee General Assembly passed legislation replacing the term "medical malpractice" with "health care liability" in every place in the Tennessee Code. *See* Act of April 23, 2012, ch. 798, 2012 Pub. Acts.

2

was not dated as required pursuant to Tennessee Code Annotated Section 29-26-121 *et seq.* and federal regulations, 45 C.F.R. §164.508.

The trial court heard the motion to dismiss on January 24, 2014. Following the hearing, by order dated February 6, 2014, the trial court granted Appellees' motion to dismiss, ruling in relevant part that:

> Specifically, the Court finds that the medical authorization included in the pre-suit notice provided by Plaintiff to Abercrombie Radiological Consultants, Inc., and Donna K. Culhane, M.D., was non-HIPAA compliant. Consequently the providers that received pre-suit notice from Plaintiff were prejudiced by being unable to obtain copies of Plaintiff's decedent's relevant medical records during the pre-suit notice period.
>
> It is hereby **ORDERED**, that the Motion to Dismiss of Defendant, Abercrombie Radiological Consultants, Inc., and Donna K. Culhane, M.D., is **GRANTED**. The Court further finds and holds that the proper sanction for Plaintiff's failure to comply with Tennessee Code Annotated §29-26-121(a)(2)(E) is dismissal with prejudice, as Plaintiff's case was therefore filed outside the applicable statute of limitations. Accordingly, this action against these Defendants is hereby dismissed with prejudice.

Appellant filed a timely appeal.

## II. Issues

The issues raised by Appellant are as follows:

> 1. Whether dismissal is the proper sanction for an open date line on a HIPAA form that accompanies notice in a health care liability action under Tennessee Code Annotated Section 29-26-121?
>
> 2. Whether dismissal, if proper, should be with full prejudice?

3

### III.  Standard of Review

In this action, Appellees properly filed a motion to dismiss. *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn.2012) ("The proper way for a defendant to challenge a complaint's compliance with Tennessee Code Annotated Section 29–26–121 is to file a Tennessee Rule of Procedure 12.02 motion to dismiss."). In *Myers*, the Court further provided as follows:

> In the motion, the defendant should state how the plaintiff has failed to comply with the statutory requirements by referencing specific omissions in the complaint and/or by submitting affidavits or other proof. Once the defendant makes a properly supported motion under this rule, the burden shifts to the plaintiff to show either that it complied with the statutes or that it had extraordinary cause for failing to do so. Based on the complaint and any other relevant evidence submitted by the parties, the trial court must determine whether the plaintiff has complied with the statutes. If the trial court determines that the plaintiff has not complied with the statutes, then the trial court may consider whether the plaintiff has demonstrated extraordinary cause for its noncompliance.

*Id.* The trial court's grant of the motion to dismiss is subject to a *de novo* review with no presumption of correctness because we are reviewing the trial court's legal conclusion. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993).

"The question of whether [a plaintiff] has demonstrated extraordinary cause that would excuse compliance with the statutes is a mixed question of law and fact, and our review of that determination is *de novo* with a presumption of correctness applying only to the trial court's findings of fact and not to the legal effect of those findings." *Myers*, 382 S.W.3d at 307–08 (citing *Starr v. Hill*, 353 S.W.3d 478, 481–82 (Tenn.2011)). This Court reviews a "trial court's decision to excuse compliance under an abuse of discretion standard." *Id*. at 308. "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn.2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn.1999)). If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative. *White v. Vanderbilt Univ*., 21 S.W.3d 215, 223 (Tenn. Ct. App.1999).

This appeal also involves the interpretation of statutes. Statutory construction is a question of law that is reviewed de novo without any presumption of correctness. *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn.2009). This court's primary objective is to carry out legislative intent without broadening or restricting the Act beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the legislature is not violated by so doing. *In re C. K.G.*, 173 S.W.3d 714, 722 (Tenn.2005). When a statute is clear, we should apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn.2004).

## IV. Analysis

Our Supreme Court has recently explained that substantial compliance with Tennessee Code Annotated Section 29-26-121 *et seq*. is the proper standard in determining whether the contents of the pre-suit notice meet the statutory requirements. *See Thurmond v. Mid–Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512 (Tenn. 2014). As explained in *Thurmond*:

> In *Myers*, we declared that the "essence" of the pre-suit notice statute is to notify potential defendants "of a [health care liability] claim before suit is filed." 382 S.W.3d at 309 (stating that section 29-26-121(a) is "to give prospective defendants notice of a forthcoming lawsuit"). Thus, we concluded that the section 29-26-121(a) requirement of pre-suit notice is "fundamental," "mandatory," and "not subject to satisfaction by substantial compliance." *Id*. at 309, 310. Because no pre-suit notice of any kind had been given or even attempted in *Myers*, we did not decide whether the statutory "requirements as to the content of the notice ... may be satisfied by substantial compliance." *Id*. at 311.
>
> We answered that question in *Stevens*, where the plaintiff attempted to comply with the pre-suit notice requirement but failed to provide a "HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." 418 S.W.3d at 552 (quoting Tenn. Code Ann. § 29-26-121(a)(2)(E)). We explained that the pre-suit notice content requirements of Tennessee Code Annotated section 29-26-121(a)(2)(A)-(E) serve distinct but related purposes. *Id*. at 554.

5

We held that where strict compliance with "a particular statutory provision is essential to avoid prejudicing an opposing litigant," then the statutory provision will be deemed mandatory and strict compliance required. *Id*. at 555. After considering the purposes served by the HIPAA-compliant medical authorization, we concluded that a plaintiff cannot satisfy this content requirement merely by providing potential defendants with actual notice of a potential claim. *Id*. However, we stopped short of interpreting the statute as demanding strict compliance. *Id*. Rather, we held that "[n]on-substantive errors and omissions" and "[a] plaintiff's less-than-perfect compliance" with [subsection] 29-26-121(a)(2)(E) will "not derail a healthcare liability claim" so long as the medical authorization provided is "sufficient to enable defendants to obtain and review a plaintiff's relevant medical records." *Id*. Thus, we held that "a plaintiff must substantially comply, rather than strictly comply, with the requirement[ ] of [subsection] 29-26-121(a)(2)(E)." *Id*.

      *Myers* and *Stevens* thus instruct that: (1) providing potential defendants pre-suit notice of health care liability claims is the "essence" and "fundamental" purpose of the pre-suit notice requirement, *Myers*, 382 S.W.3d at 309; and (2) unless strict compliance with a notice content requirement "is essential to avoid prejudicing an opposing litigant," substantial compliance with a content requirement will suffice, *Stevens*, 418 S.W.3d at 55!

  *Thurmond*, 433 S.W.3d at 519-20 (Tenn. 2014) (footnote omitted).

In *Stevens*, the plaintiff filed the required 60-day pre-suit notice but failed to include a HIPAA compliant medical authorization form. *Stevens*, 418 S.W.3d at 551. The form provided by plaintiff was deficient because it failed to permit "the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." Tenn. Code Ann. § 29-26-121(a)(2)(E). Defendants sought dismissal based upon plaintiff's failure to fully comply with section 29-26-121(a)(2). The trial court denied the motion, and the Tennessee Supreme Court granted the defendants' application for permission to appeal. The Court held that plaintiff was merely required to "substantially comply" with the content requirements set forth in section 29-26-121(a)(2). *Id.* at 554-55. Despite that finding, the Court ultimately held that plaintiff had not substantially complied with the content requirements. In so holding, the Court stated:

      In determining whether a plaintiff has substantially complied

6

with a statutory requirement, a reviewing court should consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance. Not every non-compliant HIPAA medical authorization will result in prejudice. But in this case, the medical authorization submitted by Plaintiff was woefully deficient. The errors and omissions were numerous and significant. Due to Plaintiff's material noncompliance, Defendants were not authorized to receive any of the Plaintiff's records. As a result of multiple errors, Plaintiff failed to substantially comply with the requirements of [section 29–26–121(a)(2)(E) ].

*Id*. at 556. As further discussed in ***Stevens***, Tennessee Code Annotated Section 39-36-121(a)(2)(E) "serves to equip defendants with the actual means to evaluate the substantive merits of plaintiff's claim by enabling early access to a plaintiff's medical records." ***Stevens***, 418 S.W.3d at 555. The ***Stevens*** Court went on to note that "[b]ecause HIPAA itself prohibits medical providers from using or disclosing a plaintiff's medical records without a fully compliant authorization form, it is a threshold requirement of the statute that the plaintiff's medical authorization must be sufficient to enable defendants to obtain and review a plaintiff's relevant medical records." ***Id***. (citing 45 C.F.R. §164.508(a)(1)).

Regarding the requirements for a valid HIPAA authorization, federal regulations state:

> (1) Core elements. A valid authorization under this section must contain at least the following elements:
> (i) A descripton of the information to be used or disclosed that identifies the information in a specific and meaningful fashion.
> (ii) The name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure.
> (iii) The name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure.
> (iv) A description of each purpose of the requested use or disclosure. . . .
> (v) An expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure. . . .
> (vi) Signature of the individual and date. If the authorization is signed by a personal representative of the individual, a

description of such representative's authority to act for the individual must also be provided.

45 C.F.R. § 164.508(c)(1). Here, Appellees argue that Appellant's HIPAA form is deficient because it does not comply with the requirement set out at 45 C.F.R. §164.508(c)(1)(vi), i.e., "[s]ignature of the individual **and date**. . . ." (Emphasis added). Indeed, 45 C.F.R. § 164.508(c)(1) states that in order to be a valid HIPAA authorization, the form "**must** contain these elements [i.e., those outlined at 45 C.F.R. § 164.508(c)(1)(i)–(vi)]." (Emphasis added).

In the recent case of *Hargrow v. Shelby County Tennessee*, No. 13–2770, 2014 WL 3891651 (W.D. Tenn. Aug. 7, 2014), the District Court held:

> 45 C.F.R. § 164.508 governs the elements of a valid HIPAA authorization form. *See* C.F.R. § 164.508(c)(1). Because minor deviations will not always defeat the purpose of the disclosure requirement stated in the statute, Tennessee courts require substantial rather than strict compliance with the HIPAA notice provision. *Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 555 (Tenn.2013).
>
> To determine substantial compliance, courts "consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance." *Id*. at 556. Defendants are clearly prejudiced when unable, due to a form procedural error, to obtain medical records needed for their legal defense. *Id*.
>
> Hargrow's HIPAA authorization form substantially complies with § 29-26-121(a)(2)(E). The form fails to provide the name and address of the provider releasing the records and fails to provide contact information for the intended recipient. HIPAA requires both. 45 C.F.R. § 164.508(c)(1)(ii)-(iii). Nevertheless, those omissions did not prejudice CCS because CCS was the sole medical provider. The form complies with the other provisions of 45 C.F.R. § 164.508(c)(1). It provides a description of the information to be used, a general description of each purpose of the disclosed information, an expiration date, a signature, and the date. Hargrow substantially complied with § 29-26-121(a)(2)(E) because she provided CCS sufficient notice to obtain the medical records necessary for its defense. *See Stevens ex rel*, 418 S.W.3d at 555.

*Hargrow*, 2014 WL 3891651, at \*6 (parenthetical citations to the record omitted).  In holding that a HIPAA authorization does not have to comport with every criterion set out in the federal regulations in order to be valid, the ***Hargrow*** case demonstrates the practical application of the Tennessee Supreme Court's holding in ***Myers*** that "[t]o determine whether the use of the word 'shall' in a statute is mandatory or merely directory, we look to see 'whether the prescribed mode of action is of the essence of the thing to be accomplished.'" ***Myers***, 382 S.W.3d at 309.  In ***Hargrow***, the defendant was able to obtain the medical records, which is the "essence of the thing to be accomplished" by the federal criteria concerning the validity of the HIPAA authorization.  In this regard, the ***Hargrow*** defendant "was [not] prejudiced by the plaintiff's noncompliance."  ***Stevens***, 418 S.W.3d at 556.

Here, the only allegation of error in the HIPAA form is the missing date that is required under C.F.R. §164.508(c)(1)(vi).  In her brief, Appellant explains that she

> chose to leave the date line on the HIPAA form blank as a blank
> check to Defendants, allowing them to fill in the date as they use
> it so that the form would not "become stale." The open date line
> is the only alleged omission in this case, and was done as a
> courtesy.

In support of her argument that this minor non-compliance with the HIPAA authorization requirement should be excused, Appellant first argues that "[t]he trial court did not 'consider the significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance.'"  Although, as set out in its order, the trial court made a specific finding that the defendants were prejudiced in this case by being unable to obtain the medical records because of the defective HIPAA authorization, there is nothing in the record to support this finding by the trial court.  Indeed, there is no indication that the Appellees were denied access to any medical records sought as a result of the HIPAA form provided by the Appellant.  In that there is no basis in the record to support the trial court's finding of prejudice, we do not rely on that holding in reviewing this case.

Appellant further argues that the trial court misapplied the ***Stevens*** holding.  In support of this argument, Appellant cites the following interchange from the January 24, 2014 hearing on the motion to dismiss:

> THE COURT: I'm dismissing your case—as to their motion,
> you did not give a HIPAA compliance.
>    The Supreme Court has said—and I previously have
> ruled that it's substantial and that leaving off minor things
> wouldn't affect anything.  The Supreme Court says if you don't

9

cross every "t," dot every "i," you're out.

[APPELLANT'S LAWYER]: Your Honor, again, the case that you're relying on for that proposition [i.e., *Stevens*] says that you can show substantial compliance and that substantial compliance combined with a lack of prejudice to the defendant is enough to not warrant dismissal; or, at a minimum, to warrant dismissal without prejudice—

THE COURT: Well, it says in the opinion, the whole purpose of it is so that the party can get access to this stuff to try to deal with the case before it's filed. And if you don't give them something where they can get that, then you have prejudiced them. The motion is granted.

Based upon the foregoing discussion, it is clear that the trial court mis-spoke when it said that the *Stevens* Court held that "if you don't cross every 't,' dot every 'i,' you're out." However, it is well settled that a court speaks through its orders. *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App.1977). In *Cunningham v. Cunningham*, No. W2006–02685–COA–R3–CV, 2008 WL 2521425 (Tenn. Ct. App. June 25, 2008), this Court explained:

> A judgment must be reduced to writing in order to be valid. It is inchoate, and has no force whatever, until it has been reduced to writing and entered on the minutes of the court, and is completely within the power of the judge or Chancellor. A judge may modify, reverse, or make any other change in his judgment that he may deem proper, until it is entered on the minutes, and he may then change, modify, vacate or amend it during that term, unless the term continues longer than thirty days after the entry of the judgment, and then until the end of the thirty days.

*Cunningham*, 2008 WL 2521425, at *5 (citing *Broadway Motor Co ., Inc. v. Fire Ins. Co.*, 12 Tenn. App. 278, 280 (1930)). Consequently, we usually "do not review the court's oral statements, unless incorporated in a decree, but review the court's order and judgments for that is how a court speaks." *Id*. Although the trial court clearly mis-states the *Stevens* holding in its statements from the bench, these statements were not incorporated into the court's order. However, from our review of the court's order, it nonetheless appears to extend the *Stevens* holding: "[T]he. . . decision in *Stevens*. . . is authoritative and requires dismissal of Plaintiff's action due to her failure to substantially comply with Tennessee Code Annotated §29-26-121(a)(2)(E)." We conclude that the *Stevens* holding allows more leeway regarding HIPAA compliance than the trial court gave in this case. As set out in full context

10

above, the ***Stevens*** Court held that "[n]on-substantive errors and omissions" and "[a] plaintiff's less-than-perfect compliance" with [subsection] 29-26-121(a)(2)(E) will "not derail a healthcare liability claim" so long as the medical authorization provided is "sufficient to enable defendants to obtain and review a plaintiff's relevant medical records." ***Stevens***, 418 S.W.3d at 555. Thus, we held that "a plaintiff must substantially comply, rather than strictly comply, with the requirement[ ] of [subsection] 29-26-121(a)(2)(E)." ***Id***.

In their brief, Appellees rely, *inter alia*, on the recent case of ***Roberts v. Prill***, No. E2013–02202–COA–R3–CV, 2014 WL 2921930 (Tenn. Ct. App. June 26, 2014), as authority on the issue of whether Appellant's decision to leave "an open date line" on the HIPAA authorization is fatal to her case. In ***Roberts***, as in the instant case, plaintiff admitted "that she intentionally left sections of the [HIPAA] form blank and anticipated that defendants would fill in the form." ***Id***. at \*6. Also, in ***Roberts***, the plaintiff argued that "there [was] no proof in the record of any failed attempt to gain the records of [decedent]; where parts of the release were left blank for the defendants['] insertion and where there was only one doctor Defendant who would have already had all the relevant records." ***Id***. Although there are some similarities between ***Roberts*** and the instant case, the omissions in the HIPAA form in ***Roberts*** were more substantial than in our case. In ***Roberts***, the plaintiff failed to specifically identify "the person(s) or class of persons authorized to make the requested use or disclosure" and "the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure." More importantly, the form only permitted the use or disclosure of the medical records to plaintiff's counsel. Due to plaintiff's errors, defendants in ***Roberts*** were not legally authorized to use the pertinent medical records to mount a defense, despite the fact that the records may have already been in their possession. In light of these facts, the ***Roberts*** Court affirmed dismissal of the lawsuit for failure to substantially comply with Tennessee Code Annotated Section 29-26-121(a)(2)(E). ***Id***. at \*5.

In this case, despite the trial court's holding that Appellees were prejudiced by failure to obtain the medical records due to the non-compliant HIPAA release, no evidence was adduced to support this finding. In addition, here, as in ***Roberts***, the decedent's medical records may, in fact, be held by the defendant, ARC, and may be accessible to Dr. Culhane by virtue of her employment with ARC. In ***Roberts***, this Court rejected the argument that because the pertinent medical records were already in the defendants' possession, this fact should result in a holding excusing full compliance with the statutory requirements. However, in ***Roberts***, the HIPAA release only permitted use or disclosure of the medical records to plaintiff's counsel. In the instant case, the medical release included no such limitation. While the release had an open date line, it allowed disclosure to the Appellees, which is a critical distinction between this case and ***Roberts***.

We read the ***Roberts*** holding in light of the particular shortcomings in the ***Roberts*** HIPAA

11

form, which, as discussed above, were more substantive and substantial than the omitted date on the HIPAA form in the instant case. The relatively minor omission on Appellant's HIPAA form, coupled with the lack of evidence that Appellees were prejudiced or otherwise denied access to medical records as a result of the missing date, leads us to conclude that the trial court applied the *Stevens* holding too harshly in this case. While we concede that it is not good practice to omit any of the C.F.R. criteria from a HIPAA form, we conclude that the relatively minor shortcoming in the HIPAA form here is not fatal to the Appellant's cause of action. The Appellant substantially complied with § 29-26-121(a)(2)(E) because she provided Appellees sufficient notice to obtain the relevant medical records. *Hargrow*, 2014 WL 3891651, at *6 (citing *Stevens*, 418 S.W.3d at 555). Because we hold that the trial court erred in dismissing the complaint, we pretermit Appellant's issue concerning whether the dismissal with prejudice was proper.

For the foregoing reasons, we reverse the order of the trial court. We remand the case for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellees, Abercrombie Radiological Consultants, Inc., and Donna K. Culhane, M.D., for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE