# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
December 7, 2017 Session

## MELISSA MARTIN, ET AL. v. ROLLING HILLS HOSPITAL, LLC, ET AL.

### Appeal from the Circuit Court for Williamson County
### No. 2016-8    Michael W. Binkley, Judge

_____

### No. M2016-02214-COA-R3-CV

_____

This is an appeal in a health care liability action from the dismissal of the action for Plaintiffs' failure to comply with Tennessee Code Annotated section 29-26-121(a)(2)(E) when they failed to provide the Defendants with HIPAA compliant authorizations for release of medical records. The trial court held that, as a result of the failure, Plaintiffs were not entitled to an extension of the one-year statute of limitations for bringing suit and the action was barred.  Plaintiffs appeal.  Upon our review, we find that Plaintiffs substantially complied with the requirements of section 29-26-121 and that the Defendants have not shown that they were prejudiced by the deficiencies in the authorizations; accordingly, we reverse the decision of the trial court and remand the case for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which, ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Trudy Bloodworth, Nashville, Tennessee; and Dawn M. Smith, Dallas, Texas, Pro Hac Vice, for the appellants, Melissa Martin, Camden J.H., Anthony J.H., and James Harrison.

Edward A. Hadley, Linda A. Nathenson, and Matthew J. Buchbinder, Nashville, Tennessee, for the appellee, Matthew Karl, M.D.

Ashley D. Cleek, Jackson, Tennessee, for the appellees, Rolling Hills Hospital, LLC and Universal Health Services, Inc.

**OPINION**

This is a health care liability action arising out of the death of Chelsey Elizabeth Kay Helwig on June 28, 2013. Ms. Helwig had been admitted to Rolling Hills Hospital on June 26 for specialized in-patient psychiatric care, specifically, for treatment for suicidal ideation and detoxification from opiates, benzodiazepines, alcohol, and cocaine. On the morning of June 28, she was found unresponsive in her room; staff unsuccessfully attempted to resuscitate her, and she was transferred to Vanderbilt Medical Center, where she died later that day.

The Plaintiffs in this case are: Chelsey Helwig's father, James Harrison, and Melissa Martin, Chelsey Helwig's mother, suing on behalf of herself, the Estate of Chelsey Elizabeth Helwig, and her surviving minor children. The first complaint was filed on October 17, 2014, and named Rolling Hills Hospital, LLC ("Rolling Hills"), Universal Health Services, Inc. ("Universal"), the owner of Rolling Hills, and Matthew Karl, M.D., as defendants; the action was voluntarily dismissed on January 27, 2015.

Plaintiffs filed a new action naming the same defendants on January 7, 2016. On January 28, Rolling Hills and Universal jointly moved to dismiss the suit; on March 4, Dr. Karl joined in the motion filed January 28. Defendants argued that, due to Plaintiffs' failure to comply with provisions of Tennessee Code Annotated section 29-26-121, they "were not entitled to the 120-day extension of the applicable statute of limitations that would otherwise have been afforded by [section 29-26-121(c)]," and, consequently, the suit which had been filed October 17, 2014, was barred by the one year statute of limitations at section 29-26-116(a)(1). Defendants argued further that, inasmuch as the first complaint was not timely filed, Plaintiffs could not rely on the savings statute at Tennessee Code Annotated section 28-1-105 to render the second complaint timely filed, and that the second action should be dismissed pursuant to Tennessee Rule of Civil Procedure 12.02(6).

Following a hearing, the court entered a Memorandum and Order dismissing the case as to all defendants; the court concluded that: (1) Defendants were not prejudiced by Plaintiffs' noncompliance with pre-suit notice requirements; (2) Plaintiffs were not entitled to the 120-day extension of the statute of limitations under section 29-26-121(c) because they failed to substantially comply with Tennessee Code Annotated section 29-26-121(a)(2)(E), and the complaint filed October 17, 2014, was therefore time-barred; (3) as a consequence, the complaint filed January 7, 2016, was dismissed. Plaintiffs appeal, raising the following issues for our review:

1. Whether the trial court erred in finding the Plaintiffs were not entitled to Tennessee Code Annotated Section 29-26-121(c)'s 120-day extension of the statute of limitations, and the first complaint was therefore time-barred.

2

2. Whether the trial court erred in determining the Plaintiffs failed to substantially comply with Tennessee Code Annotated § 29-26-121(a)(2)(E) when they provided Defendants with HIPAA authorizations that failed to include the mother's authority to sign the document, the expiration date of the document, and the names of all healthcare providers authorized to use or disclose the requested information.

Defendants raise the following issues:

1. Whether the trial court erred in determining the Plaintiffs substantially complied with Tennessee Code Annotated § 29-26-121(a)(3)(B)(ii) prior to filing the original complaint when the Plaintiffs failed to serve the Defendants registered agent with pre-suit notice.

2. Whether the trial court erred in determining the Plaintiffs substantially complied with Tennessee Code Annotated § 29-26-121(a)(2)(D) when the Plaintiffs failed to provide the Defendants with a complete list of each healthcare provider that received notice.

## I.    ANALYSIS

Generally, a motion to dismiss filed pursuant to Tennessee Rule of Civil Procedure Rule 12.02(6) challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d 695, 700 (Tenn. 2009); *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 710 (Tenn. 2003). The resolution of such a motion is determined by an examination of the pleadings alone. *Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 851 (Tenn. 2010); *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). A defendant who files a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010) (quoting *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 516 (Tenn. 2005)). In considering a motion to dismiss, courts "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007) (quoting *Trau-Med*, 71 S.W.3d at 696).

A motion to dismiss pursuant to Rule 12.02 is the proper vehicle for a defendant in a health care liability action to challenge a plaintiff's compliance with Tennessee Code Annotated section 29-26-121. *Myers v. Amisub, Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012). "In the motion, the defendant should state how the plaintiff has failed to comply with the statutory requirements by referencing specific omissions in the complaint and/or by

3

submitting affidavits or other proof." *Id*. Once the defendant makes a properly supported motion, the burden is then the plaintiff's to show that it either "complied with the statutes or that it had extraordinary cause for failing to do so." *Id*.

In *Myers*, a health care liability action in which our Supreme Court reviewed the trial court's decision to deny a motion to dismiss for failure to comply with section 29-26-121, the court also set forth the standard for review of such a motion:

> Because the trial court's denial of the Defendants' motion involves a question of law, our review is de novo with no presumption of correctness. *Graham v. Caples,* 325 S.W.3d 578, 581 (Tenn. 2010). The question of whether [the plaintiff] has demonstrated extraordinary cause that would excuse compliance with the statutes is a mixed question of law and fact, and our review of that determination is de novo with a presumption of correctness applying only to the trial court's findings of fact and not to the legal effect of those findings. *Starr v. Hill,* 353 S.W.3d 478, 481–82 (Tenn. 2011). We review the trial court's decision to excuse compliance under an abuse of discretion standard. "A court abuses its discretion when it applies an incorrect legal standard or its decision is illogical or unreasonable, is based on a clearly erroneous assessment of the evidence, or utilizes reasoning that results in an injustice to the complaining party." *Wilson v. State,* 367 S.W.3d 229, 235 (Tenn. 2012) (citing *Wright ex rel. Wright v. Wright,* 337 S.W.3d 166, 176 (Tenn. 2011)). We examine the legal sufficiency of the complaint and do not consider the strength of the plaintiff's evidence; thus, all factual allegations in the complaint are accepted as true and construed in flavor of the plaintiff.

382 S.W.3d at 307-308.

The statute of limitations for health care liability actions is one year. Tenn. Code Ann. § 29-26-116(a)(1). Tennessee Code Annotated section 29-26-121(c) provides a 120-day extension from the expiration of the limitations period where the person asserting a potential claim for health care liability substantially complies with the notice requirements at section 121(a). Chelsea Helwig died on June 28, 2013; the first suit was filed more than one year later, on October 17, 2014, and was voluntarily dismissed pursuant to Rule 41 of the Tennessee Rules of Civil Procedure on January 27, 2015. The complaint was refiled on January 7, 2016, pursuant to the savings statute at section 28-1-105.[1] In their motion, Defendants contended that the suit should be dismissed because the first suit was not timely filed.

---

[1] Tennessee Code Annotated section 28-1-105(1):

> (a) If the action is commenced within the time limited by a rule or statute of limitation,

4

At the trial court and on appeal Defendants contend that Plaintiffs are not entitled to the 120-day extension of the statute of limitations because Plaintiffs: (1) failed to send the notice to Rolling Hills' and Universal's registered agent, as required by Tennessee Code Annotated section 29-26-121(a)(3)(B)(ii); (2) failed to provide Rolling Hills and Universal with Dr. Karl's name in the pre-suit notice, as required by section 29-26-121(a)(2)(D); and (3) by providing Defendants with authorizations that "were incomplete and did not authorize [Rolling Hills and Universal] to obtain complete medical records from each other provider being sent a notice prior to the filing of the complaint," as required by section 29-26-121(a)(2)(E). We discuss each contention in order.

### A. Notice to the Defendants' Agents

Tennessee Code Annotated section 29-26-121(a)(3)(B)(ii) provides that:

(3) The requirement of service of written notice prior to suit is deemed satisfied if, within the statutes of limitations and statutes of repose applicable to the provider, one of the following occurs, as established by the specified proof of service, which shall be filed with the complaint:
* * *
    (B) Mailing of the notice:
* * *

    (ii) To a health care provider that is a corporation or other business entity at both the address for the agent for service of process, and the provider's current business address, if different from that of the agent for service of process; provided, that, if the mailings are returned undelivered from both addresses, then, within five (5) business days after receipt of the second undelivered letter, the notice shall be mailed in the specified manner to the provider's office or business address at the location where the provider last provided a medical service to the patient.

In response to the motion to dismiss, Plaintiffs filed a copy of the Affidavit of Mailing, which had been prepared by their counsel in accordance with section 29-26-

---

but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action, or where the judgment or decree is rendered in favor of the plaintiff, and is arrested, or reversed on appeal, the plaintiff, or the plaintiff's representatives and privies, as the case may be, may, from time to time, commence a new action within one (1) year after the reversal or arrest. Actions originally commenced in general sessions court and subsequently recommenced pursuant to this section in circuit or chancery court shall not be subject to the monetary jurisdictional limit originally imposed in the general sessions court.

121(a)(4) and attached as an exhibit to the complaint filed on October 17, 2014. In the affidavit counsel stated that the notice required by the statute and a HIPAA compliant medical authorization had been sent to Rolling Hills and Universal on October 4, 2013, and to Dr. Karl on June 26, 2014; the affidavit did not say that notice had been sent to CT Corporation System, Rolling Hills' registered agent, or Corporation Trust Company, Universal's registered agent. Defendants argue that strict compliance with section 29-26-121(a)(3)(B)(ii) is required and that Plaintiff's failure to serve the registered agents of Rolling Hills and Universal subjects the case to dismissal.

Section 29-26-121(a)(3)(B)(ii) states that the pre-suit notice must be sent to the health care provider at "both the address for the agent for service of process and the provider's current business address, if different from that of the agent." In *Arden v. Kozawa*, defendants moved for summary judgment on the ground that strict compliance with sections 29-26-121(a)(3)(B) and (a)(4) was required, and that the manner of service used by plaintiff in that case – sending the pre-suit notice by commercial carrier rather than certified mail with return receipt requested – did not comply with the statute; the trial court granted the motion, and this Court affirmed. 466 S.W.3d 758, 761-62 (Tenn. 2015). Our Supreme Court granted the plaintiff's application to appeal, stating the issue before the court as "whether the manner and proof of service prescribed by Tennessee Code Annotated sections 29-26-121(a)(3)(B) and (a)(4) may be satisfied through substantial compliance." *Id*. at 763. The court reasoned that the "overarching purpose of the pre-suit notice statute is to ensure that health care defendants receive timely notice of a forthcoming lawsuit"[2] and, after applying the principles of statutory construction, held that "the manner and proof of service requirements" were directory, not mandatory, and could be achieved through substantial compliance. *Id*. at 764. In determining whether the plaintiffs substantially complied with the statute, the court considered "the extent and significance of the plaintiff's deviation from the statute and whether the defendant was prejudiced by the plaintiff's noncompliance." *Id*. at 763.

---

[2] The Court observed:

> Above all, these changes to the pre-suit notice statute were meant to ensure that notice is provided to health care defendants before suit is filed. As Senator Overbey explained, the Legislature was "trying to make sure [the notice] gets delivered ... to a responsible party," *Hearing on S.B. 2109, Before the Senate Judiciary Comm.,* 106th Gen. Assemb., Reg. Sess. (Tenn. May 27, 2009) (statement of Sen. Overbey)], and as Representative Coleman explained, the amendment "improves the notice provisions so that physicians know that there are claims being made and lawyers know that the service of process is taking place," *Hearing on H.B.2233,* [*Before the House Judiciary Comm., 106th Gen. Assemb., Reg. Sess. (Tenn. May 26, 2009)* (statement of Rep. Coleman)].

466 S.W.3d at 766.

Defendants do not claim that they did not receive timely notice, and the Affidavit of Mailing shows Rolling Hills and Universal signed return receipts acknowledging the receipt of the pre-suit notices. They do not assert that they were prejudiced by the fact that their respective agents were not sent the notice, and we discern none. Accordingly, we concur with the trial court's judgment that Plaintiff's lack of compliance with section 29-26-121(a)(3)(B)(ii) was not cause to dismiss the action.

## B. Requirements of Pre-suit Notice

### 1. Section 29-26-121(a)(2)(D)

Section 29-26-121(a)(1) requires that a person asserting a potential claim for health care liability give notice of the claim to each provider who will be named as a defendant at least sixty days before filing the complaint. Section 29-26-121(a)(2) sets forth five requirements to be included in the notice, as follows:

> (A) The full name and date of birth of the patient whose treatment is at issue;
> (B) The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;
> (C) The name and address of the attorney sending the notice, if applicable;
> (D) A list of the name and address of all providers being sent a notice; and
> (E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

Tenn. Code Ann. § 29-26-121(a)(2).[3]

As noted in *Stevens ex rel. Stevens v. Hickman Community Health Care Services*, section 29-26-121(a)(2)(A)-(C) "facilitate early resolution of healthcare liability claims" by advising "defendants who the plaintiff is, how to reach him or her and contact his or her attorney," and section 29-26-121(a)(2)(D)-(E) "serve an investigatory function, equipping defendants with the actual means to evaluate the substantive merits of the plaintiff's claim by enabling early discovery of potential co-defendants and early access to a plaintiff's medical records." 418 S.W.3d 547, 554 (Tenn. 2013). In *Hamilton v. Abercrombie Radiological Consultants, Inc.*, this court held that "substantial compliance with Tennessee Code Annotated Section 29-26-121 *et. seq.* is the proper standard in determining whether the contents of the pre-suit notice meet the statutory requirements."

---

[3] These requirements were referred to by Justice Wade as "content requirements" in his opinion in *Stevens ex rel. Stevens v. Hickman Community Health Care Services, Inc.*, 418 S.W.3d 547, 561 (Tenn. 2013) (Wade, C.J., concurring in part and dissenting in part). We will use the terminology in our discussion as well.

7

487 S.W.3d 114, 117 (Tenn. Ct. App. 2014) (citing *Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512 (Tenn. 2014)).

Rolling Hills and Universal complain that the notice that each received did not include Dr. Karl's name as a provider receiving notice and that the notice Rolling Hills received did not include Universal.

In their response to the motion to dismiss, Plaintiffs included a section entitled "Pre-suit Notice and Certificate of Good Faith of First Complaint," in which they set forth the procedural history of the first suit. Pertinent to this issue, the response stated:

> On October 13, 2013, pursuant to T.C.A. § 29-26-121(a), Plaintiffs served notices of claim upon Defendants Rolling Hills Hospital, LLC d/b/a Rolling Hills Hospital and Universal Health Services, Inc. . . . The notices were sent certified mail return receipt requested, and both Defendants executed the return receipt on October 10 and October 11, respectively. . . .
>
> Thereafter, on or about April 25, 2014, counsel for Defendants contacted Plaintiffs' counsel regarding this case to inquire about a potential pre-suit settlement and he requested a demand. The parties engaged in settlement discussions over the next two months and Plaintiffs agreed to delay filing suit until after the parties could mediate the case.
>
> During settlement negotiations, Defendants' counsel called into question the conduct of Ms. Helwig's treating psychiatrist, co-defendant Dr. Matthew Karl. On June 26, 2014, Plaintiffs served Defendant Karl with a pre-suit notice of claim in compliance with the statutory provisions at issue herein.[4]

(Footnote in original omitted.)

The Affidavits of Mailing show, and Rolling Hills and Universal do not dispute, that they were served with pre-suit notices on October 13, 2013, and that on June 26,

---

[4] Consistent with this explanation, in its ruling on the motion to dismiss, the court stated that it "acknowledges Plaintiffs' argument that Dr. Karl was not identified in the original pre-suit notice because it was not until settlement discussions that Dr. Karl's conduct was called into question." There is no indication from the record that Defendants disputed the representations of Plaintiffs' counsel in the trial court; on appeal they summarily state, without citation to the record or elaboration, that "there is no proof in the record to support, and these Defendants dispute, Plaintiffs' contentions that it was defense counsel who initially called Dr. Karl's conduct into question." Defendant's argument, however, is not evidence preponderating against the court's statement; moreover, Defendants do not dispute that Dr. Karl's conduct was not called question until settlement negotiations had begun and that, following the conclusion of the unsuccessful negotiations, Dr. Karl was served with notice.

2014, the Plaintiffs served Dr. Karl with pre-suit notice. Thus, Rolling Hills and Universal could not have been provided the identity of Dr. Karl in the pre-suit notice because Plaintiffs had not determined that Dr. Karl should be a party to the suit at the time notice was sent to Defendants.

In their brief on appeal, Rolling Hills and Universal maintain they were prejudiced because "Dr. Karl was never involved in the pre-suit settlement discussions or mediation between Plaintiffs and these Defendants, which could potentially have resulted in the case being settled during the pre-suit notice period." The have failed to identify any evidence of prejudice, and we fail to see any prejudice to Defendants relative to pre-suit settlement discussions which were unsuccessful.

On appeal, the Defendants also contend "the Plaintiffs failed to list [Universal] on the notice letter to Rolling Hills." In their brief, Rolling Hills and Universal acknowledge that "[Universal] is merely a corporate entity (not Provider/Health Plan) and obviously had no treatment records regarding Ms. Helwig." Section 29-26-121(a)(2)(D) only requires the names and addresses of providers, and the Defendants have represented that Universal is not a provider, as that term is contemplated by the statute.[5]

The record shows that Dr. Karl had not been identified as a potential defendant when the original suit was filed and that, prior to the filing of the second suit, Plaintiffs complied with section 29-26-121(a)(2)(D) by providing Rolling Hills and Universal with a complete list of all the providers receiving the September 21, 2015 notice, including Dr. Karl. The trial court correctly rejected Defendants' argument.

## 2. Section 29-26-121(a)(2)(E)

Section 29-26-121(a)(2)(E) requires that the pre-suit notice include "[a] HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice."[6] In *Stevens* our

---

[5] *See* Tenn. Code Ann. § 29-26-101(a)(2).

[6] 45 Code of Federal Regulations 164.508(c)(1) provides the "core elements" of a HIPPA compliant authorization:

> (1) Core elements. A valid authorization under this section must contain at least the following elements:
> > (i) A description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion.
> > (ii) The name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure.
> > (iii) The name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure.

Supreme Court explained the purpose of section 29-26-121(a)(2)(E) as it reviewed the trial court's denial of a motion to dismiss for failure to comply with section 29-26-121:

> [T]he requirements of Tenn. Code Ann. § 29-26-121(a)(2)(D) and Tenn. Code Ann. § 29-26-121(a)(2)(E) serve an investigatory function, equipping defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early discovery of potential co-defendants and early access to a plaintiff's medical records.
>
> … Because HIPAA itself prohibits medical providers from using or disclosing a plaintiff's medical records without a fully compliant authorization form, it is a threshold requirement of the statute that the plaintiff's medical authorizations must be sufficient to enable defendants to obtain and review a plaintiff's relevant medical records. …
>
> … A plaintiff's less-than-perfect compliance with Tenn. Code Ann. § 29-26-121(a)(2)(E), however, should not derail a healthcare liability claim. Non-substantive errors and omissions will not always prejudice defendants by preventing them from obtaining a plaintiff's relevant medical records. Thus, we hold that a plaintiff must substantially comply rather than strictly comply, with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E).

418 S.W.3d 554-555.

Four HIPAA forms that Plaintiffs provided to Defendants were submitted in support of the motion to dismiss. Defendants contend that the forms did not comply with the regulation in that: (1) Plaintiffs did not specify "the name or identity of any 'Provider/Health Plan' that was authorized to disclose records," as required by subsection (ii); (2) the forms did not include an expiration date, as required by subsection (v); and (3) Melissa Martin, who signed the forms, "did not provide the required documentation

---

(iv) A description of each purpose of the requested use or disclosure. The statement "at the request of the individual" is a sufficient description of the purpose when an individual initiates the authorization and does not, or elects not to, provide a statement of the purpose.

(v) An expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure. The statement "end of the research study," "none," or similar language is sufficient if the authorization is for a use or disclosure of protected health information for research, including for the creation and maintenance of a research database or research repository.

(vi) Signature of the individual and date. If the authorization is signed by a personal representative of the individual, a description of such representative's authority to act for the individual must also be provided.

or description of her authority to act on behalf of her adult daughter in releasing the records," as required by (vi). In ruling on this issue, the trial court held:

> Particularly, the Court finds Plaintiffs have failed to indicate the providers that were authorized to make required disclosures, failed to list an expiration date, and left blank section B on the HIPPA authorization form. Plaintiffs contend regardless of any failures, Defendants have failed to specifically articulate how they have been prejudiced. The Court notes the Tennessee Court of Appeals has stated in most cases resulting in dismissal, "defendants were prejudiced by the fact that they were unable to obtain the patient's medical records due to some flaw in the medical authorization." *Hughes v. Henry Cty. Med. Ctr.*, 2015 WL 3562733, at *4 (Tenn. Ct. App. June 9, 2015). Further, Plaintiffs argue Defendants were not prejudiced because they already had possession of the relevant documents; however, possession is only one purpose of the authorization. *Roberts v. Pri11*, 2014 WL 2921930 at *6 (Tenn. Ct. App. June 26, 2014) ("HIPPA generally provides that a covered entity may not use or disclose protected health information without valid authorization."). The Court finds the omissions in this case were significant because without this information, even if Defendants were already in possession of certain documentations, the authorizations were useless. Moreover, the authorizations would not have allowed Defendants to request or obtain records from any of the other providers.
>
> Therefore, the Court concludes Plaintiffs failed to substantially comply with Tenn. Code Ann. § 29-26-121(a)(2)(E).

The court did not explain its conclusion that the authorizations were "useless" or reach the question of whether Defendants were prejudiced by Plaintiffs' errors. As we consider this issue, we are mindful of the instruction in *Stevens* that "[i]n determining whether a plaintiff has substantially complied with a statutory requirement, a reviewing court should consider the extent and significance of the plaintiff's errors and omissions *and* whether the defendant was prejudiced by the plaintiff's noncompliance." 418 S.W.3d at 556 (emphasis added).

In *Hughes v. Henry County Medical Center*, the plaintiff filed a health care liability action; because of an error, the HIPAA authorization provided by plaintiff did not permit the hospital to obtain medical records from the plaintiff's doctor. No. W2014-01973-COA-R3-CV, 2015 WL 3562733, at *1 (Tenn. Ct. App. June 9, 2015). On the defendant's motion, the trial court dismissed the case without prejudice because the authorization did not comply with section 29-26-121(a)(2)(E). *Id*. This court reversed the trial court, holding that, because the physician only saw the patient at the hospital and had no records other than those of the hospital, "a release for [the doctor's] records would

11

have no effect on [the hospital's] ability to obtain [plaintiff's] 'complete medical records.'" *Id*. at \*3. In so ruling, this Court noted that the trial court "fail[ed] to consider the question of prejudice, but rather relies solely on its finding that Appellants did not substantially comply with the HIPAA medical authorization." *Id*.

Section 29-26-121(a)(2)(E) provides that the HIPAA authorization "permit[] the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." While Plaintiffs do not concede that the authorizations were deficient, they argue that Defendants were not prejudiced by the deficiencies the trial court found. In their brief, Rolling Hills and Universal point out the deficiencies in the authorizations and what the deficiencies allegedly do not allow them to do, but fail to state how they are prejudiced. Dr. Karl states that he attempted to use the authorizations to obtain records but that "the authorization was ineffective in obtaining records."[7]

Pertinent to this issue, the complaint alleged that Dr. Karl "is a medical doctor who was, at all relevant times, a healthcare provider specializing in psychiatric medicine and providing care and treatment to patients at Defendant Rolling Hills Hospital, LLC d/b/a Rolling Hills Hospital including but not limited to the Decedent Chelsey Helwig" and that Dr. Karl "was an employee and/or ostensible agent of Defendant Rolling Hills who was hired and/or retained to provide specialized mental health-care services to patients including but not limited to Ms. Helwig." Also, as noted earlier, in their brief Rolling Hills and Universal acknowledge that "[Universal] is merely a corporate entity (not Provider/Health Plan) and obviously had no treatment records regarding Ms. Helwig."

Under the record presented, Defendants have failed to demonstrate that they were prejudiced as a result of the deficiencies in the HIPAA authorizations; and we do not presume that they were.

## II. CONCLUSION

As noted in *Hughes*, the Tennessee Supreme Court "has long recognized that '[d]ismissals based on procedural grounds … run counter to the judicial system's general objective of disposing of cases on the merits.'" *Hughes*, 2015 WL 3562733 at \*4 (quoting *Henry v. Goins*, 104 S.W.3d 475, 481 (Tenn. 2003)). Tennessee Code Annotated

---

[7] In support of his position, Dr. Karl references correspondence between his counsel and counsel for Rolling Hills and Universal. In his letter, Dr. Karl's counsel never requests any records. Instead he states: "I believe the authorizations are deficient. I trust that you share the same opinion." The letter concludes with "If you believe that the authorizations are insufficient, then please simply send me a letter stating that the authorizations are not sufficient because they fail to identify your hospital as the provider authorized to release medical records." Having reviewed the letters, we are not persuaded that they reflect a good faith attempt on the part of the Defendants to secure the records, rather than show an effort by their counsel to establish a record upon which to present this argument.

sections 29-26-121(a)(2)(D) and (E) serve an investigatory function, *see Stevens*, 418 S.W.3d at 554, and section (a)(3)(B)(ii) insures that potential health care defendants receive timely notice of a forthcoming suit. *Arden*, 466 S.W.3d at 764. Plaintiffs substantially complied with the pre-suit notice requirements in each of these sections, and Defendants have not shown that they were prejudiced by the deficiencies found by the court. As a result, the Plaintiffs were entitled to section 29-26-121(c)'s 120-day extension to the statute of limitations. Accordingly, we reverse the judgment dismissing the action.

_____

RICHARD H. DINKINS, JUDGE